The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. The medical records of Dr. Ferre, Dr. Oakley, Dr. Howell, and Dr. Brenner as well as an ergonomic analysis performed by Alan Gorrod were received into evidence and marked as follows:
 a. Dr. Ferre's records marked as stipulated exhibit 1;
 b. Dr. Oakley and Dr. Howell's records marked as stipulated exhibit 2;
 c. Dr. Brenner's records marked as stipulated exhibit 3;
 d. The ergonomic report by Alan Gorrod marked as stipulated exhibit 4.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff's regular job duties as a licensed practical nurse required her to be on her feet continuously during her work shift for up to seven hours. Plaintiff had to engage in prolonged walking and standing in order to perform administrative, charting, and other record keeping duties.
2. Plaintiff's regular job duties as a licensed practical nurse for the defendant-employer required her to be able to transfer patients weighing up to three hundred pounds from the patient's bed to another position on the bed as well as transfer patients from their bed to other locations. Plaintiff had to be able to perform this lifting on a repetitive basis and without assistance.
3. On April 1, 1993, plaintiff's authorized treating physician, Dr. Oakley, performed arthroscopic surgery on plaintiff's right knee. This diagnostic surgery disclosed no internal derangement. Dr. Oakley released plaintiff to return to work as a licensed practical nurse restricting her to only working four hours a day beginning on May 31, 1993. Dr. Oakley released plaintiff to return to work without restrictions because he could not find any objectively verifiable abnormalities that would cause the plaintiff to continue to make subjective complaints of pain.
4. On or about May 31, 1993, plaintiff continued to experience pain in her right knee and she continued to have problems with her right knee giving away. Dr. Oakley was unable to provide treatment that effected a cure with regard to these problems that plaintiff was experiencing.
5. Plaintiff obtained permission to be able to obtain a second opinion from Dr. Ferre with regard to what course of action needed to be taken with regard to her right knee injury. Dr. Ferre recommended that plaintiff begin a course of rehabilitation that included six weeks of physical therapy. The defendant-employer by and through its agent, claims adjuster Ms. Peebles, directed plaintiff to receive a third opinion from a Dr. Brenner. Dr. Brenner supported Dr. Ferre's recommendation that plaintiff participate in a short term rehabilitation program. Dr. Brenner restricted the plaintiff from repetitive bending, squatting, stooping and lifting as well as prolonged walking and standing.
6. A June 21, 1995 ergonomic job analysis of the licensed practical nurse position with the defendant-employer recommended modifications that needed to be made in order for this position to be suitable for the plaintiff to perform given the restrictions set forth by Dr. Brenner. These modifications included allowing plaintiff to sit at the nursing station, in the room of a patient, or other area of the facility in order to perform the administrative, charting, and related record keeping. Also, plaintiff should be allowed to expect to be able to obtain assistance from other staff for completion of transfers of patients who are heavy or patients who are unable to assist with the transfer and/or being limited to performing only stand-by or supervised transfers of patients. These modifications would result in the creation of a position that does not exist in the competitive marketplace.
7. At the time that Dr. Oakley released plaintiff to return to work on May 31, 1993, plaintiff was unable to perform job tasks that required repetitive bending, squatting, stooping and lifting as well as prolonged walking and standing.
8. The licensed practical nurse position that was made available to the plaintiff on May 31, 1993 was not an offer of suitable employment because plaintiff was expected to be able to work with no physical limitations or restrictions.
9. On or about June 1994, the defendant-employer by and through an insurance adjuster communicated to plaintiff's counsel that a light duty sedentary position was available for plaintiff. On June 20, 1994 plaintiff wrote a letter to Ms. Devine, the director of nursing for the defendant-employer, requesting a job description for the position available so that she could submit the description of the job duties to Dr. Brenner for approval. Despite plaintiff's diligent effort, no actual light duty job within plaintiff's restrictions has ever been offered to the plaintiff by the defendant-employer.
10. Plaintiff is able to return to work within the restrictions established by Dr. Brenner.
11. Plaintiff has not reached maximum medical improvement with regard to her right knee injury.
12. Since January 5, 1994, plaintiff has diligently sought other employment within the restrictions set forth by Dr. Brenner. Plaintiff has contacted over twenty different employers in search of a nursing job with duties within the restrictions set forth by Dr. Brenner. Plaintiff has responded to want ads in the newspaper, sought assistance from the Employment Security Commission in locating work, and attempted to start her own business. Plaintiff has conducted a reasonable but unsuccessful job search.
13. As a result of her September 8, 1992 compensable injury by accident, plaintiff has continued to be unable to earn any wages since July 2, 1993.
14. Plaintiff's disability can be lessened with the assistance of vocational rehabilitation.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Upon the approval by the Industrial Commission of the March 19, 1993 Form 21 Agreement, a presumption arose that the plaintiff was unable to work at wages equal to the wages she was receiving at the time that her injury occurred and the burden was on the defendants to rebut this presumption. The defendant has failed to rebut this presumption. Albert Stone v. G GBuilders., 121 N.C. App. 671, 468 S.E.2d 510 (1996).
2. Plaintiff is entitled to receive temporary total disability compensation at a rate of $261.33 for the time period beginning July 2, 1993 to the present and continuing. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendant pay for all medical expenses reasonable calculated to effect a cure, give relief, or lessen plaintiff's disability. N.C. Gen. Stat. §97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. The approval of the Form 24 application on July 2, 1993 by the Industrial Commission is HEREBY RESCINDED.
2. Defendant shall pay temporary total disability compensation at a rate of $261.33 for the time period beginning July 2, 1993 to the present and continuing until further order of the Industrial Commission. Defendant shall offset this amount by $2,613.50. The remaining amount has accrued and shall be paid in a lump sum subject to the attorney's fee approved below.
3. Defendant shall pay all medical expenses incurred or to be incurred as a result of the September 8, 1993. injury by accident. The plaintiff shall participate in any vocational rehabilitation efforts provided by the defendants.
4. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel.
5. Plaintiff's claim for permanent partial disability, if any, is RESERVED.
This the 27th day of August 1997.
 S/ ___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ___________________ THOMAS J. BOLCH COMMISSIONER
S/ ___________________ COY M. VANCE COMMISSIONER
DCS:bjp